# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**HELEN SMITH**                                                                                            **PLAINTIFF**

**V.**                          **CASE NO.  3:08CV00081 BD**

**MICHAEL J. ASTRUE,**
**Commissioner,**
**Social Security Administration**                                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Helen Smith has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). For reasons that follow, the decision of the Administrative Law Judge ("ALJ")[1] is affirmed.

**I.      Procedural History:**

Plaintiff filed the current application for disability and disability insurance benefits under Title II on October 11, 2005, alleging that she became disabled on July 19, 2002, due to diabetes mellitus with blurred vision, hypertension, and pain. (Tr. 34, 44) Plaintiff had filed prior applications for disability benefits on December 15, 2002. An ALJ denied those applications on July 18, 2005. Due to the preclusive effect of that decision, the period under consideration in the present case began July 19, 2005.

---

[1] The Honorable Lesly W. Mattingly, Administrative Law Judge.

The ALJ held a hearing on September 27, 2007, and Plaintiff appeared with her attorney Mike Sherman. (Tr. 339-360) The ALJ received testimony from Plaintiff and from a vocational expert ("VE"), Elizabeth Clem. On January 24, 2008, the ALJ issued a decision denying Plaintiff benefits. (Tr. 13-19) After the administrative Appeals Council denied Plaintiff's request for review, she filed the current Complaint for Review of Decision (docket entry #2) on May 27, 2008.

**II.    Background:**

At the time of the hearing, Plaintiff was a fifty-year-old female with an eleventh-grade education. She had past relevant work experience as a machine operator and a packer. Plaintiff was five feet tall and weighed one hundred thirty-two pounds.

Plaintiff testified that drowsiness, leg pain, and vision problems prevented her from working. (Tr. 348-351) She stated her blood pressure and diabetes medication caused the drowsiness. (Tr. 348) Plaintiff also testified that she took four ibuprofen per day for leg pain. (Tr. 349) Regarding vision, Plaintiff was able to watch and follow programs on television, but she had to be eight feet or closer to the screen. (Tr. 350)

Plaintiff regularly sought treatment for her diabetes mellitus and hypertension. From 2002 until 2007, Plaintiff received treatment from the East Arkansas Family Health Center. (Tr. 169-228) In March, 2004, providers recommended strict compliance with diet restrictions and exercise. (Tr. 186) Progress notes from April and June of 2004 show that Plaintiff's diabetes was diet-controlled. (Tr. 185, 184) The treatment plan was

to decrease sugar and fat, and to exercise. (Tr. 185) On March 16, 2005, progress notes advised strict diet and exercise. (Tr. 178)

On January 11, 2006, Plaintiff was prescribed Metformin 500; diet and exercise were again recommended. (Tr. 173) On April 19, 2006, Plaintiff was taking Inderal for hypertension and Metformin for diabetes. (Tr. 197) During visits in April, August, September, and November of 2006, Plaintiff was alert and oriented. (Tr. 171-172) In February and March of 2007, Plaintiff denied pain and was alert and oriented. (Tr. 169-170)

On July 30, 2007, Plaintiff went to the Memphis Department of Veterans Affairs ("VA") Medical Center emergency room to request medication refills.[2] (Tr. 252-255) Her medical history indicated diabetes mellitus, hypertension, chronic headaches, and glaucoma. (Tr. 254) Plaintiff denied experiencing blurred vision, vision loss, shortness of breath, dyspnea of exertion, chest pain, palpitations, or leg swelling. (Tr. 254) Her respiratory, cardiovascular, and musculoskeletal systems were normal. (Tr. 254) Plaintiff was treated for diabetes and hypertension and given ibuprofen, triamterene, lactulose, and lisinopril. (Tr. 252)

The next day, Plaintiff went for a VA optometry consultation. (Tr. 238-242) She was diagnosed with glaucoma, diabetes without retinopathy, and hypertension without

---

[2] It appears Plaintiff was eligible for VA services due to her husband's service connected disability. (Tr. 255)

retinopathy. (Tr. 242) She returned to the VA for glaucoma monitoring and testing. (Tr. 263-270) On August 28, 2007, Plaintiff's vision was 20/25 or better. (Tr. 266)

On September 28, 2007, Plaintiff returned to the VA for follow-up regarding her hypertension and diabetes. (Tr. 278-284) She reported abdominal pain and a right eye injury that resulted from a fight. (Tr. 278) She denied vision problems. Subsequent abdominal examinations were negative. (Tr. 286, 330) Plaintiff's hypertension was "at goal" and she continued maxzide and lisinopril. (Tr. 279) Plaintiff's diabetes was "better and she continued metformin. (Tr. 279)

Plaintiff returned to the VA on December 11, 2007, complaining of constant headache, fatigue, and decreased vision. (Tr. 306-308) She was given Tylenol #3 and referred to ophthalmology for her headache. Plaintiff's diabetes was at goal, and her hypertension was adequately controlled. (Tr. 308)

Plaintiff returned to the VA for an optometry consultation on December 20, 2007. (Tr. 295-306) She reported that she had started seeing brief flashes of light two weeks before the consultation. She did not report fluctuations in vision. (Tr. 295) Plaintiff's assessment was glaucoma with acceptably low intraocular pressure and longstanding headache, not vision related. (Tr. 305) Her vision was 20/25 or better.

On March 13, 2008, Plaintiff returned to the VA for follow-up regarding her hypertension and diabetes. (Tr. 311-314) She complained of nausea and a decrease in appetite. She denied fatigue or pain. (Tr. 312-313) Plaintiff's diabetes was controlled,

but due to nausea, her metformin prescription was changed to glyburide. (Tr. 313) Plaintiff's prescription of atenalol was increased because her hypertension was "not at goal." (Tr. 313) Plaintiff was counseled to eat a low sodium, low fat diet, and to exercise. (Tr. 313)

### III.  Findings of the ALJ:

The ALJ followed the required five-step sequential analysis set out in the social security regulations, 20 C.F.R. § 404.1520, finding: (1) that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability; (2) that she suffered from diabetes mellitus, hypertension, and glaucoma; (3) that Plaintiff did not have an impairment, or combination of impairments, that rose to the level of severity for any impairment listed in Appendix 1 to Subpart P, Regulation No. 4; (4) that she had past relevant work as a machine operator and packer; and (5) that Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of light work[3] on a sustained basis. At step four, the ALJ found Plaintiff "not disabled" because her impairments did not prevent her from performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv) and 20 C.F.R. § 404.1520(f).

---

[3] "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*.

Plaintiff contends that the findings of the ALJ are not supported by substantial evidence and contain errors of law based on the following: (1) the ALJ's credibility determination is not supported by substantial evidence; and, (2) the ALJ's finding that Plaintiff could return to her past relevant work is not supported by substantial evidence.

IV.  **Legal Analysis:**

In reviewing the ALJ's decision, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g). This review function is limited, and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

"Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision." *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered, but the decision cannot be reversed "merely because there exists substantial evidence supporting a different outcome." *Id.* "Rather, if, after reviewing the record . . . it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]." *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted). Thus, the Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record

as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).

    A.    **The ALJ's Credibility Determination:**

Under 20 C.F.R. §§ 404.1529, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the objective medical evidence. The ALJ is in the best position to gauge the credibility of testimony, and those credibility determinations are entitled to some deference. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). An ALJ's conclusions may be upheld if the record as a whole supports them. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

In this case, the ALJ acknowledged Plaintiff's complaints of pain and drowsiness, and considered these subjective complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). (Tr. 14-16) The ALJ concluded that, in view of the evidence as a whole, Plaintiff's complaints were not totally credible. (Tr. 18)

Pain is largely subjective; thus, in evaluating pain, an ALJ must rely on circumstantial evidence. *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995). Pain is considered disabling, however, only when it is not remediable and is so severe that it precludes a claimant from engaging in any form of substantial gainful activity. *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994), quoting *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989).

In this case, Plaintiff's pain was treated with ibuprofen. She periodically complained of headaches and abdominal pain, but only alleged disabling leg and back pain. The medical records provide little support for the Plaintiff's allegations of the severity of her pain.

The medical records show that between April 19, 2006, and February 22, 2008, Plaintiff rarely complained of leg pain. At numerous doctor visits, she complained of no pain at all. (Tr. 169, 170, 231, 233, 250, 265, 313, 333) On May 7, 2007, Plaintiff described her pain as a "7" on a ten-point scale as a result of splinters in her finger. (Tr. 233)

On September 28, 2007, Plaintiff had pain and swelling from being punched in the eye when she stepped in the middle of a fight involving her niece. (Tr. 278) These instances of pain are not related to Plaintiff's alleged impairments. Regardless, the medical records show that ibuprofen was effective in treating Plaintiff's pain. If an impairment can be controlled by medication, it can not be considered disabling. *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (quoting *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).

Plaintiff testified that drowsiness, caused by blood pressure and diabetes medications, was the only reason she could not sit and stand periodically to perform work. (Tr. 354-355) Plaintiff's allegations of drowsiness are less supported even than her allegations of disabling pain.

8

Plaintiff testified that she would wake at 8 a.m., take a bath, eat breakfast, take her medications, then go back to sleep. (Tr. 355-356) She stated she would wake again at 12 p.m., take more medications, and watch television. (Tr. 355) Plaintiff would then go to bed at 6 p.m. and sleep until the next morning. (Tr. 356) Plaintiff testified that she was awake only four hours each day. (Tr. 357)

None of the medical records support Plaintiff's allegations of a near-comatose state due to side effects of her blood pressure and diabetes medications. Instead, the records described Plaintiff as alert, and she even denied fatigue. (Tr. 169-172, 278, 307, 312-313) Instead, the medical record shows that Plaintiff complained of fatigue only once to her doctors. (Tr. 306-308) Beyond this one instance, there is no evidence that Plaintiff ever told her doctors about her drowsiness or requested different medications.

Plaintiff described extremely limited physical abilities, but the record provides no medical support for the claimed limitations. None of Plaintiff's health care providers restricted Plaintiff's physical activities. In fact, they consistently and repeatedly advised Plaintiff to exercise. (Tr. 173, 178, 185, 186, 313)

Plaintiff testified that she could not perform any household chores. (Tr. 355-357) She testified that her disabled husband did the grocery shopping and housework, and that her sister did the laundry. (Tr. 355-356). Plaintiff previously stated, however, that she could cook, clean, iron, and do laundry. (Tr. 122) She specifically stated that she shopped for clothing and food once a week. (Tr. 123)

The medical evidence in this case contradicts Plaintiff's subjective allegations of limitations. Many of Plaintiff's alleged limitations are completely unsupported. Her prior statements contradicted her testimony at the hearing. While this Court does not doubt that Plaintiff's impairments caused some limitations, after reviewing the entire record, it is clear the ALJ did not err in finding Plaintiff's allegations less than fully credible.

B.  **Plaintiff's Residual Functional Capacity:**

Plaintiff argues the ALJ erred in finding Plaintiff had the RFC to perform her past relevant work. Substantial evidence in the record, however, supports the ALJ's finding that Plaintiff could perform her past work as a machine operator or packer.

The ALJ bears the initial responsibility for assessing Plaintiff's RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Plaintiff's RFC is what she can do despite her limitations. 20 C.F.R. § 404.1545 (2001)(2003). In determining Plaintiff's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that Plaintiff can perform in a work setting, after giving appropriate consideration to all of her impairments that are supported by the record. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

The ALJ must determine the Plaintiff's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and Plaintiff's own descriptions of her limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Plaintiff argues that "the ALJ [did] not have before him evidence of [Plaintiff's] work related limitations."[4] (docket entry #11, p. 12)  This appears to be an attempt to prematurely shift the burden to the Commissioner.  While the ALJ has a duty to assess RFC, it is Plaintiff's burden to prove her RFC.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004); *Baldwin,* 349 F.3d at 556; *Pearsall*, 274 F.3d at 1217; *Young*, 221 F.3d at1069 n.5; *Anderson*, 51 F.3d at 779.  In this case, the burden never shifted to the Commissioner.  All of Plaintiff's relevant medical records were in the file.  Plaintiff's acknowledgment that the record did not evidence work-related limitations, even if true, is counter to her alleged entitlement to disability benefits.  Plaintiff had the burden of proving her disability, and thus bore the responsibility of presenting the strongest case possible.  *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

Plaintiff failed to identify any additional evidence she believed necessary to determine her RFC.  She testified that the side effects of her medication and leg pain were the only impairments preventing her from working.  (Tr. 348-351, 354-355)  This testimony indicates that no amount of additional testing would evidence exertional limitations beyond the ALJ's findings.  In addition, it is of some relevance that Plaintiff's

---

[4] The record contained medical evidence (Tr. 138-165, 169-309), a disability determination case analysis rating Plaintiff's physical impairments non severe (Tr. 166-168), prior job descriptions (Tr. 75-76, 84-85, 111-112), Plaintiff's testimony regarding limitations (Tr. 342-358), and additional evidence.

attorney did not identify, obtain, or try to obtain, evidence which Plaintiff now complains is not in the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

The ALJ found that Plaintiff retained the RFC to perform her past relevant work, which was exertionally light or sedentary.[5] Plaintiff argues that:

> [g]iven [her] age and education, had the ALJ found that she could only perform sedentary work, and could not perform past relevant work, 20 C.F.R. Pt. 404, Subpt. P, App. 2 Rule 201.09 would direct a conclusion of "disabled" for Plaintiff. As such, the residual functional capacity issue and its impact on Smith's past work is especially crucial.
> (docket entry #11, p. 13)

This argument has no merit, as the ALJ determined that one job that constituted past relevant work was performed at the sedentary level. This means even if Plaintiff was capable of performing only sedentary work, she still could perform past relevant work, and 20 C.F.R. Pt. 404, Subpt. P, App. 2 Rule 201.09 would not apply.

Plaintiff has sought medical care for her alleged impairments, but none of her treating physicians noted any significant limitations on her activities that could not be controlled by medication. Instead, proper diet, exercise, and medication were recommended.

After reviewing the entire record, it is clear substantial evidence supports the ALJ's determination that Plaintiff could participate in light and sedentary work, with

---

[5] The exertion level of Plaintiff's past work was supported by VE testimony (Tr. 359-360), prior job descriptions (Tr. 75-76, 84-85, 111-112), and Plaintiff's testimony regarding her past relevant work (Tr. 345-349).

noted limitations. The only contrary evidence was Plaintiff's subjective complaints, which the ALJ did not find entirely credible.

## V.  Conclusion:

There is substantial evidence in the record to support the Commissioner's denial of benefits to Plaintiff. It is clear, as the ALJ pointed out, that Plaintiff suffered at least one severe impairment. There is sufficient evidence in the record, however, to support the ALJ's assessment that Plaintiff retained the capacity to perform her past relevant work. Accordingly, Plaintiff's appeal is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED this 25th day of September, 2009.

_____
UNITED STATES MAGISTRATE JUDGE